# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

CERENNA GRIFFIN,

    Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 18-CV-85-LRR

**ORDER**

*I.*    *INTRODUCTION*............................................................................*1*

*II.*   *RELEVANT PROCEDURAL HISTORY*.............................................*2*

*III.*  *STANDARD OF REVIEW*................................................................*2*
    *A.*   *Review of Final Decision*........................................................*2*
    *B.*   *Review of Report and Recommendation*.....................................*4*

*IV.*  *OBJECTIONS*..............................................................................*6*
    *A.*   *Step-Five Determination*.........................................................*6*
    *B.*   *Treating Physician Opinions*...................................................*9*
        *1.*   *Applicable law*..............................................................*9*
        *2.*   *Dr. Weldon's opinions*..................................................*10*
        *3.*   *Dr. Kopesky's opinions*.................................................*11*
    *C.*   *RFC and Period of Disability*.................................................*13*
    *D.*   *Appointments Clause Challenge*..............................................*16*

*V.*   *CONCLUSION*...........................................................................*20*

## I. INTRODUCTION

The matter before the court is Plaintiff Cerenna Griffin's Objections (docket no. 20) to United States Magistrate Judge Mark A. Roberts's Report and Recommendation (docket no. 19), which recommends that the court affirm Defendant Commissioner of Social Security's ("Commissioner") final decision to deny disability benefits to Griffin.

## II. RELEVANT PROCEDURAL HISTORY

On August 27, 2018, Griffin filed a Complaint (docket no. 3), seeking judicial review of the Commissioner's final decision denying Griffin's applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. On December 21, 2018, the Commissioner filed an Answer (docket no. 8). On March 26, 2019, Griffin filed the Plaintiff's Brief (docket no. 15). On April 24, 2019, the Commissioner filed the Defendant's Brief (docket no. 16). On May 7, 2019, Griffin filed the Reply Brief (docket no. 18).[1] On May 6, 2019, the matter was referred to Judge Roberts for issuance of a report and recommendation. On November 21, 2019, Judge Roberts issued the Report and Recommendation. On December 5, 2019, Griffin filed the Objections. On January 31, 2020, Griffin filed a "Notice of Supplemental Authority" (docket no. 21). The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

### A. *Review of Final Decision*

The Commissioner's final determination not to award disability insurance benefits is subject to judicial review. *See* 42 U.S.C. § 405(g). The court has the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id*. The Commissioner's factual findings shall be conclusive "if supported by substantial evidence." *Id*. The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3). "The court 'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Fentress v.*

---

[1] Griffin filed her Reply Brief two days after its due date, which was May 5, 2019. *See* December 26, 2018 Social Security Briefing Schedule Order (docket no. 11).

*Berryhill*, 854 F.3d 1016, 1019-20 (8th Cir. 2017) (quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the [administrative law judge ("ALJ")], but [it] do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress*, 854 F.3d at 1020; *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (providing that review of the Commissioner's decision "extends beyond examining the record to find substantial evidence in support of the [Commissioner's] decision" and noting that the court must also "consider evidence in the record that fairly detracts from that decision"). The Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)). The court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "An ALJ's decision is not outside the zone of choice simply because [the court] might have reached a different conclusion had [the court] been the initial finder of fact." *Id*. (quoting *Bradley*, 528 F.3d at 1115). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than

the [Commissioner] or because substantial evidence supports a contrary conclusion").

### B. *Review of Report and Recommendation*

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party fails to object to any portion of a magistrate judge's report and recommendation, he or she waives the right to de novo review. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The United States Supreme Court has stated that "[t]here is no indication that Congress, in enacting § 636(b)(1)[ ], intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 152 (1985). However, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under de novo or any other standard." *Id.* at 154.

The Eighth Circuit has suggested that in order to trigger de novo review, objections

to a magistrate judge's conclusions must be specific. *See Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); *see also Belk*, 15 F.3d at 815 (noting that some circuits do not apply de novo review when a party makes only general and conclusory objections to a magistrate judge's report and recommendation and finding that *Branch* indicates the Eighth Circuit's "approval of such an exception"); *Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990) (reminding the parties that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). The Sixth Circuit Court of Appeals has explained the approach as follows:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error. We should not permit appellants to do the same to the district court reviewing the magistrate's report.

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Goney v. Clark*, 749 F.2d 5, 6 n.1 (3d Cir. 1984) (finding that "plaintiff's objections lacked the specificity necessary to trigger de novo review"); *Whited v. Colvin*, No. C 13-4039-MWB, 2014 WL 1571321, at *2-3 (N.D. Iowa Apr. 18, 2014) (concluding that, because the plaintiff "offer[ed] nothing more than a conclusory objection to . . . [the report and recommendation] . . . [the plaintiff's] objection [should be treated] as if he had not objected at all"); *Banta Corp. v. Hunter Publ'g Ltd. P'ship*, 915 F. Supp. 80, 81 (E.D. Wis. 1995) ("De novo review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made.").

## IV. OBJECTIONS

In the Objections, Griffin argues that: (1) Judge Roberts erred in finding that the ALJ's determination at step-five of the sequential evaluation process is supported by substantial evidence; (2) Judge Roberts erred in finding that the ALJ properly weighed Dr. Weldon's opinions;[2] (3) Judge Roberts erred in finding that the ALJ properly weighed the opinions of Dr. Kopesky; (4) Judge Roberts erred in finding that the ALJ fully and fairly developed the record with regard to Griffin's RFC and whether a period of disability could apply; and (5) Judge Roberts erred in finding that Griffin failed to timely raise her Appointments Clause challenge under *Lucia v. S.E.C.*, ___ U.S. ___, 138 S. Ct. 2044 (2018). *See* Objections at 2-8. After conducting a de novo review of the objected-to portions of the Report and Recommendation and the Administrative Record ("AR") (docket nos. 9-1 through 9-16 and 10-1 through 10-8), the court shall overrule the Objections.

### A. Step-Five Determination

Griffin objects to Judge Roberts's decision not to follow *Jennings v. Berryhill*, No. C17-3062-LTS, 2018 WL 4107911 (N.D. Iowa Aug. 29, 2018) and find that "the ALJ's 'simple routine instructions and tasks' limitation created an apparent unresolved conflict with the vocational expert's identification of two Reasoning Level 3 jobs the ALJ relied on to deny benefits at step five of the sequential evaluation process." Objections at 2. Griffin maintains that, while Judge Roberts relied on a different case, which held the opposite of

---

[2] In the heading for this objection, in addition to asserting that the ALJ failed to properly weigh the opinions of Dr. Weldon, it also states that "[t]he ALJ did not provide good reasons for the weight afforded to . . . Griffin's subjective allegations of limitations." Objections at 4. However, the argument is directed solely to the opinions of Dr. Weldon and makes no mention of Griffin's subjective allegations of disability. *See id.* It is unclear whether the heading in the Objections constitutes an error in drafting the Objections, but nevertheless, because Griffin does not address the issue of the weight afforded to her subjective allegations of disability, the court also will not address that issue. *See Aulston v. Astrue*, 277 F. App'x 663, 664-65 (8th Cir. 2008) (declining to consider an undeveloped argument and citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases for proposition that undeveloped arguments are waived)).

*Jennings*, here, the court should follow *Jennings* "[f]or the reasons already briefed . . . and her case should be remanded." *Id.*

At "step five of the sequential evaluation process the burden shifts to the Commissioner to show that the claimant can perform other types of work and that the particular type of work is available in the national economy."[3] *Crawford v. Colvin*, 809 F.3d 404, 409 (8th Cir. 2015). An ALJ "'may rely on a vocational expert's response to a properly formulated hypothetical question to meet her burden of showing that jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform.'" *Gann v. Berryhill*, 864 F.3d 947, 952 (8th Cir. 2017) (quoting *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004)). However, "an ALJ may not rely on a vocational expert's testimony about the requirements of a job if an 'apparent unresolved conflict' exists between that testimony and the job's description in the [DOT]." *Thomas v. Berryhill*, 881 F.3d 672, 677 (8th Cir. 2018). "If there is an 'apparent unresolved conflict' between [vocational expert] testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the vocational expert] provides a basis for relying on the [vocational expert] testimony rather than on the DOT information.'" *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014) (quoting SSR 00-4p, 2000 WL 1898704, at *2-4 (Dec. 4, 2000)); *see also Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1003 (8th Cir. 2018) ("SSR 00-4p places an affirmative responsibility on the ALJ 'to ask about "any possible conflict" between [vocational expert] evidence and the DOT, and to obtain explanation for any such conflict,

---

[3] Pursuant to the federal regulations, an ALJ must complete the five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore*, 769 F.3d at 988-89. The five steps an ALJ must consider are: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work." *Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014).

before relying on [vocational expert] evidence to support a determination the claimant is not disabled.'") (quoting *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014))).

In his decision, the ALJ determined Murphy's RFC as follows:

> [Griffin] has the residual functional capacity to perform sedentary work . . . except for requiring a sit/stand option allowing the individual to sit or stand alternatively at will, provided the individual is not off task more than [ten percent] of the work period. The individual cannot climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs. The individual can occasionally stoop and crouch but never kneel or crawl. The individual is able to use a hand held device for uneven terrain or prolonged ambulation. The individual cannot work around hazardous machinery or at unprotected heights. The individual is able to understand, remember and carry out simple routine instructions and tasks consistent with SVP 1 and 2 type jobs with only occasional interaction with the general public, coworkers and supervisors. The individual can have no strict production quotas with an emphasis on per shift rather than per hour basis.

AR at 20.

Further, in his decision, at step five, the ALJ explained that he:

> asked the vocational expert whether jobs exist in the national economy for an individual with [Griffin's] age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a document preparer[;] . . . surveillance system monitor[;] . . . and addresser[.] . . .

*Id.* at 28-29. The ALJ determined that "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering [Griffin's] age, education, work experience, and residual functional capacity, [Griffin] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* at 29.

Griffin's objections are without merit. The ALJ's RFC assessment limited Griffin to being "able to understand, remember and carry out simple routine instructions and tasks."

8

*Id.* at 20. Such limitations are consistent with jobs requiring level 2 and level 3 reasoning. *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (finding no direct conflict between a limitation of "simple, routine and repetitive work activity" and jobs requiring level 2 reasoning); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding no conflict between a limitation to unskilled work with the ability to follow "simple, concrete instructions" and jobs requiring level 3 reasoning); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007) (same). Having reviewed the entire record, the court finds no "apparent unresolved conflict" between the vocational expert's testimony and the DOT and no error in the ALJ's step-five determination. Further, Judge Roberts did not err in deciding not to rely on *Jennings*, which is an unreported district court case adopting an unobjected-to report and recommendation. Judge Robert's Report and Recommendation is consistent with *Moore*, *Renfrow* and *Hillier*, as set forth above. *See also Murphy v. Commissioner*, No. 18-CV-61-LRR, 2019 WL 2372896, at *5-*6 (N.D. Iowa Apr. 10, 2019) (relying on *Moore*, *Renfrow* and *Hillier* to find no apparent unresolved conflict between the vocational expert's testimony and the DOT, where the claimant was limited to "simple, routine, and repetitive tasks"). Accordingly, the court shall overrule this objection.

### B. Treating Physician Opinions

#### 1. Applicable law

"The opinion of a treating physician is generally afforded 'controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Wildman*, 596 F.3d at 964). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *See Hamilton v. Astrue*, 518

9

F.3d 607, 610 (8th Cir. 2008). When an ALJ discounts a treating physician's opinion, he or she "must 'give good reasons' for doing so." *Chesser*, 858 F.3d at 1164 (quoting *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012)). "Good reasons for assigning lesser weight to the opinion of a treating source exist where 'the treating physician's opinions are themselves inconsistent,' *Cruze* [*v. Chater*], 85 F.3d [1320,] 1325 [(8th Cir. 1996)], or where 'other medical assessments are supported by better or more thorough medical evidence,' *Prosch* [*v. Apfel*], 201 F.3d [1010,] 1012 [(8th Cir. 2000)]." *Id.*

### 2. *Dr. Weldon's opinions*

Griffin objects to Judge Roberts's finding that the ALJ provided good reasons for the weight afforded to Dr. Weldon's opinions. *See* Objections at 4. Griffin maintains that the ALJ "did not provide good reasons for the weight afforded to Dr. Weldon's opinions." *Id.*

In the decision, the ALJ addressed Dr. Weldon's opinions as follows:

> The April 20, 2017 mental medical source statement of Kija Weldon, M.D., indicated [Griffin's] major depressive disorder [met] the criteria described in paragraph A and B of listing 12.04 (Ex. 17F/108). The undersigned gives little weight to this opinion because it is inconsistent with the material medical evidence and note[s] from treating and examining medical professionals previously cited. An individual's residual functional capacity and whether an individual is disabled under the Act are not medical issues regarding the nature and severity of an individual's impairments but administrative findings that are dispositive of a case. The regulations provide that the final responsibility for deciding these issues are reserved to the Commissioner. A medical source opinion on issues reserved to the Commissioner is never entitled to controlling weight or special significance (20 CFR 404.1527(d) and 416.927(d)).

AR at 27. Earlier in his decision, the ALJ determined that:

> As for [Griffin's] depression and anxiety, the undersigned notes [Griffin] has no history of psychiatric hospitalizations. She also stated in July 2015 she had no history of outpatient counseling or psychotherapy (Ex. 9F/2 and 14F/19-20 and 23-25). There are multiple examinations in the record that indicated [Griffin]

> was alert, oriented and had a normal mood, affect, speech, judgment and behavior with no suicidal or homicidal intent or plan (Ex. 5F/7, 14F/11 and 15F/9-10, 37-38, 61-63, 75-77, 90, 109, 122-23 and 173-74). This evidence is not consistent with [Griffin's] allegations regarding the severity of the mental symptoms. [Griffin] acknowledged in August 2016 that she did better when she regularly took medications (Ex. 14F/6). The key to controlling [Griffin's] mental symptoms is following her treatment regimen and taking medication as prescribed.

*Id.* at 24.

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Weldon. The ALJ justifiably discounted Dr. Weldon's opinions because the opinions were "inconsistent or contrary to the medical evidence as a whole." *Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016) (quoting *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011)). While the ALJ could have better articulated the reasons for the weight afforded to Dr. Weldon's opinions, "[a]n arguable deficiency in opinion writing that had no practical effect on the decision . . . is not a sufficient reason to set aside the ALJ's decision." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (second alteration in original) (quoting *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014)). Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court shall overrule this objection.

### 3. *Dr. Kopesky's Opinions*

Griffin objects to Judge Roberts's finding that the ALJ provided good reasons for the weight afforded to Dr. Kopesky's opinions. *See* Objections at 4-5. Griffin maintains that "the ALJ did not explain what in the record was inconsistent with Dr. Kopesky's opinions." *Id.* at 5.

In the decision, the ALJ addressed Dr. Weldon's opinions as follows:

> The August 12, 2015 physical medical source statement of

> Kevin Kopesky, M.D., indicated [Griffin] could perform less than the full range of light work and would have symptoms severe enough to interfere with attention and concentration on even simple work tasks [twenty-five percent] of the time. She would be absent from work more than four days a month due to her impairments or treatment (Ex. 11F/1-5). The undersigned gives little weight to this opinion because it is inconsistent with the material medical evidence and note[s] from treating and examining medical professionals previously cited. An individual's residual functional capacity under the Act is not a medical issue regarding the nature and severity of an individual's impairments but administrative findings that is dispositive of a case. The regulations provide that the final responsibility for deciding this issue is reserved to the Commissioner. A medical source opinion on issues reserved to the Commissioner is never entitled to controlling weight or special significance (20 CFR 404.1527(d) and 416.927(d)).

AR at 26-27. Earlier in his decision, the ALJ stated that:

> The undersigned notes that [Griffin] had deep vein thrombosis and peripheral vascular disease that resulted . . . in a right below the knee amputation in November 2014 (Ex. 2F/56 and 158). [Griffin] underwent a revision of the right below the knee amputation in December 2014 (Ex. 8F/912). There was no evidence of additional surgery after this date or any indication of complications related to the surgery. As of February 2015 and thereafter, there are multiple physical examinations that indicated [Griffin] had normal muscle tone, coordination and gait with no evidence of skin lesions or ulcerations in the right lower extremity stump. There was no evidence of any vascular, musculoskeletal, neurological or sensory deficits in the right lower extremity (Ex. 5F/7 and 15F/9-10, 37-38, 61-63, 75-77, 90, 109, 122-23, 173-74). [Griffin] was advised to exercise regularly (Ex. 5F/8 and 10F/5). This evidence is not consistent with [Griffin's] allegations regarding limitations related to use of the right lower extremity. On April 2015, [Griffin] was able to ambulate with a prosthesis and no other device (Ex. 10F/5). The January 2016 exam noted [Griffin] was walking on icy streets and sidewalks (Ex. 14F/17). In March 2016 [Griffin] reported she was walking to the grocery store (Ex. 14F/13).

> [Griffin] was able to walk to her sister's apartment in April 2016 (Ex. 14F/12). [Griffin] did require a new prosthesis in April 2016 but the May 2016 exam noted she was the caregiver for her disabled sister for a couple of weeks (Ex. 14F/9). This evidence indicates [Griffin] is able to ambulate and stand with minimal difficulty.

*Id.* at 24.

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Kopesky. The ALJ justifiably discounted Dr. Kopesky's opinions because the opinions were "inconsistent or contrary to the medical evidence as a whole." *Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016) (quoting *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011)). While the ALJ could have better articulated the reasons for the weight afforded to Dr. Kopesky's opinions, "[a]n arguable deficiency in opinion writing that had no practical effect on the decision . . . is not a sufficient reason to set aside the ALJ's decision." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (second alteration in original) (quoting *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014)). Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court shall overrule this objection.

### C. *RFC and Period of Disability*

Griffin objects to Judge Roberts's conclusion that the ALJ sufficiently developed the record with regard to her physical RFC, and Judge Roberts's determination that she waived her argument regarding a closed period of disability. *See generally* Objections at 4-5. Griffin maintains that "the ALJ should have obtained further medical expert testimony concerning [her] functioning for the year following her sudden and unexpected right leg amputation." Objections at 5.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the RFC to perform a significant number of other jobs in the national

economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Id.* (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)).

Additionally, an ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

The ALJ thoroughly addressed and considered Griffin's medical and treatment history, including both physical and psychological symptoms. *See* AR 21-24, 26-27 (providing a thorough discussion of Griffin's overall medical history and treatment). The ALJ also properly considered and thoroughly addressed Griffin's subjective allegations of disability in making his overall disability determination, including determining Griffin's RFC. *See id.* at 21, 25, 27 (providing a thorough review of Griffin's subjective allegations of disability). Further, having fully reviewed the administrative record in this case, the court agrees with Judge Roberts that "the ALJ had a sufficient record upon which to base his decision, an[d] additional medical opinion is not necessary, and the ALJ's decision regarding [Griffin's] physical RFC is supported by substantial evidence on th record as a whole and

14

should not be reversed." Report and Recommendation at 41.

Therefore, bearing in mind that the court has reviewed the entire record in this matter, the court finds that the ALJ properly considered Griffin's medical records, observations of treating physicians and Griffin's own description of her limitations in making the RFC assessment for Griffin. *See* AR at 21-27 (providing a thorough discussion of the relevant evidence for making a proper RFC determination); *see also Combs*, 878 F.3d at 646 (explaining what constitutes relevant evidence for assessing a claimant's RFC). Furthermore, the court finds that the ALJ's decision is based on a fully and fairly developed record. *See Byes*, 687 F.3d at 915-16. Because the ALJ considered the medical evidence as a whole, the court concludes that the ALJ made a proper RFC determination supported by the medical evidence. *See Combs*, 878 F.3d at 646; *Guilliams*, 393 F.3d at 803.

Turning to the issue of a closed period of disability, Social Security benefits may be awarded on either a continuing basis or for a closed period of time, that is where a disabling condition later ceases to be disabling. *See Harris v. Sec'y of Dept. of Health & Human Servs.*, 959 F.3d 723, 724 (8th Cir. 1992); *Overy v. Berryhill*, No. 4:18CV264ACL, 2019 WL 1379965, at *9 (E.D. Mo. Mar. 27, 2019). In order to qualify for a closed period of disability, "a claimant must still meet the definition of disability which is an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Devary v. Colvin*, 5 F.Supp.3d 1023, 1032 (N.D. Iowa 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

Even assuming that the issue was not waived, though the court agrees with Judge Roberts that it was, *see* Report and Recommendation at 42, Judge Roberts correctly found that Griffin did not establish that "she was entitled to a closed period of disability." *Id.* Nothing in the Objections persuades that court that Judge Roberts was incorrect in finding that Griffin presented "no evidence other than her own statements that she felt ready to return to work in 2016 to support her argument that April 2016 should be the end date of

a closed period of disability." *Id.* Indeed, Judge Roberts correctly points out that:

> [Griffin] cites no treatment notes, medical records, or other evidence that establishes a closed period of disability. Certainly, [Griffin] was unable to engage in substantial gainful activity for some period [of] time after her amputation and revision surgeries. However, [Griffin] cites no specific records to support her argument that she is entitled to a closed period of disability lasting at least one year and thus leaves the [c]ourt in the position of guessing at what evidence supports this assertion.

*Id.* at 43 (citing *Singer v. Harris*, 897 F.3d 970, 980 (8th Cir. 2018) ("We cannot tell whether the district court erred in ruling if the plaintiff does not direct us to a place in the record where we can find it, and so we consider only those contentions that include appropriate citations. *Manning v. Jones*, 875 F.3d 408, 410 (8th Cir. 2017)."))). While, in the Objections, Griffin cites to some portions of the administrative record, she does not cite to any evidence which establishes that she was disabled for a closed period of time. Moreover, as noted above, the court has already determined that the ALJ made a proper RFC determination, which is supported by the medical evidence in the record as a whole. Accordingly, the court shall overrule this objection.

### D. Appointments Clause Challenge

Here, Griffin offers a purely conclusory argument stating only that she "objects [to] the [Report and Recommendation's] findings on this issue and continues to rely on her principal briefing." Objections at 7. Also, Griffin requests that, "[s]hould this [c]ourt not otherwise remand this case, . . . the [c]ourt delay entering judgment in this case until the Eighth Circuit addresses this issue," which was argued in three cases that were heard on appeal in November 2019. *Id.* The court presumes that Griffin objects to Judge Roberts's conclusion that she "failed to timely raise her Appointments Clause argument under *Lucia*," and therefore waived the claim. Report and Recommendation at 43-47.

Initially, the court notes that Griffin's argument fails to comply with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and

16

recommendation" to "file *specific*, written objections to the . . . report and recommendation." LR 72A (emphasis added). Moreover, Griffin's failure to object to Judge Roberts's findings on this point with any specificity means that Griffin has waived her right to de novo review of this issue. *See Thompson*, 897 F.2d at 357-58 (providing that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). Nevertheless, in this instance, the court shall consider Griffin's Appointments Clause challenge. *See Thomas*, 474 U.S. at 154 (providing that, while de novo review is not required when a party fails to object to a magistrate judge's report and recommendation, the court may apply "de novo or any other standard [of review]").

Griffin first raised the Appointments Clause challenge to this court on judicial review. Because Griffin did not raise her Appointments Clause challenge before the ALJ or Appeals Council, the court finds that she has waived this issue. *See N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 798 (8th Cir. 2013) (concluding that a plaintiff who raised an Appointments Clause challenge "waived its challenge to the Board's composition because it did not raise the issue before the Board"); *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (finding that a claimant's failure to raise a disability claim during the administrative process "waived [the claim] from being raised on appeal"); *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." (quoting *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999))); *Trejo v. Berryhill*, No. EDCV 17-0879-JPR, 2018 WL 3602380, at *3 n.3 (C.D. Cal. July 25, 2018) ("To the extent *Lucia* applies to Social Security ALJs, [the] [p]laintiff has forfeited the issue by failing to raise it during her administrative proceedings.").

On January 31, 2020, Griffin filed the "Notice of Supplemental Authority," citing *Cirko o/b/o Cirko v. Comm'r of Soc. Sec.*, — F.3d —, 2020 WL 370832 (3d Cir. Jan. 23, 2020), which held "claimants for Social Security disability benefits need not exhaust

17

Appointments Clause challenges before Administrative Law Judges or the Appeals Council." Notice of Supplemental Authority at 1. While the court respects the decision of the Third Circuit Court of Appeals panel in *Cirko*, the court declines to follow the Third Circuit's decision. This court is not bound by the decisions of the Third Circuit. Further, since *Cirko* was filed, district courts across the country have declined to follow its holding. For example, in *Ramazetti v. Comm'r of Soc. Sec.*, No. 8:19-cv-260-T-MAP, 2020 WL 428950 (M.D. Fla. Jan. 28, 2020), the district court determined that the claimant's Appointments Clause challenge failed because the claimant waived the issue by not raising it before the ALJ or Appeals Council. *See id.* at *8. Further, the district court stated that "[t]he Supreme Court in *Lucia* did not make a blanket finding that all ALJs are subject to the Appointments Clause, just that SEC ALJs are so subject." *Id.* The district court points out that, "[a]t the time the Supreme Court decided *Lucia*, the SEC had only five ALJs. . . . In contrast, there are currently over 1,700 Social Security Administration ALJs." *Id.* The district court also notes that "[t]he Social Security Administration annually receives about 2.6 million initial disability claims and completes about 689,500 ALJ hearings; in 2018, it took an average 809 days to process a claim from its initial receipt to an ALJ decision, with more than 850,000 people waiting for ALJ hearings." *Id.* The district court concluded that "[i]f courts were to apply *Lucia* to Social Security cases as Plaintiff argues this [c]ourt should, millions of cases would need [to] be remanded for rehearing by a different ALJ. Given these important efficiency concerns and the Supreme Court's specific findings in *Lucia*, the [c]ourt is skeptical that *Lucia* is even controlling as to Social Security Administration ALJs." *Id.* (quoting *Miaolino v. Comm'r of Soc. Sec.*, No. 2:18-cv-494-FtM-UAM, 2019 WL 2724020 (M.D. Fla. July 1, 2019)). Other district courts have declined to follow *Cirko* since it was filed. *See Streich v. Berryhill*, No. 3:18-cv-01977 (RAR), 2020 WL 563373, at *2-*3 (D. Conn. Feb. 5, 2020); *Ricks v. Comm'r of Soc. Sec.*, No. 18-1097-RLB, 2020 WL 488285, at *3-*4 (M.D. La. Jan. 30, 2020).

Furthermore, prior to *Cirko* being filed, the vast majority of district courts across the

country agree with this court's reasoning. *See Kevin F. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1454 (ATB), 2020 WL 247323, at *7 (N.D.N.Y. Jan. 16, 2020); *Younger v. Comm'r of Soc. Sec.*, No. CV-18-02975-PHX-MHB, 2020 WL 57814, at *4-5 (D. Ariz. Jan. 6, 2020); *Nestor v. Comm'r of Soc. Sec.*, No. 19-cv-580 (BMC), 2019 WL 4888649, *3 (E.D.N.Y. Oct. 3, 2019); *Brooks v. Saul*, No. 17-cv-699-wmc, 2019 WL 4667920, at *4 (W.D. Wis. Sept. 25, 2019); *Hodge v. Saul*, No. 1:18CV206, 2019 WL 3767130, at *5 (M.D.N.C. Aug. 9, 2019); *Harris v. Saul*, No. 4:18-CV-135-RJ, 2019 WL 2865840, at *5 (E.D.N.C. July 2, 2019); *Jones v. Berryhill*, No. 4:18CV503-CAS, 2019 WL 2583157, at *8 (N.D. Fla. June 21, 2019); *Edwards v. Berryhill*, No. 3:18-CV-615(JAG), 2019 WL 2619542, at *4-5 (E.D. Va. June 6, 2019); *Allen v. Berryhill*, No. 17-CV-03414-HSG, 2019 WL 1438845, at *13 (N.D. Cal. Mar. 31, 2019); *Lopez v. Berryhill*, No. 18-20626-CV-TORRES, 2019 WL 1429632, at *5-*7 (S.D. Fla. Mar. 29, 2019); *Delores A. v. Berryhill*, No. ED CV 17-254-SP, 2019 WL 1330314, at *10-*11 (C.D. Cal. Mar. 25, 2019); *Hodges v. Comm'r of Soc. Sec.*, No. 1:18-CV-394, 2019 WL 1330847, at *1-*4 (S.D. Ohio Mar. 25, 2019); *Mullins v. Berryhill*, No. 7:180CV-002-JMH, 2019 WL 1339588 (E.D. Ky. Mar. 25, 2019); *Fitzgerald v. Berryhill*, No. 17-CV-00144-GNS-LLK, 2019 WL 1125666, at *2-*4 (W.D. Ky. Mar. 12, 2019); *Bonilla-Bukhari v. Berryhill*, 357 F.Supp.3d 341, 349-52 (S.D.N.Y. Mar. 4 2019); *Catherine v. Berryhill*, 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019); *Axley v. Comm'r Soc. Sec.*, No. 1:18-CV-1106-STA-cgc, 2019 WL 489998 (W.D. Tenn. Feb. 7, 2019); *Shipman v. Berryhill*, No. 1:17-CV-00309-MR, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22, 2019); *A.T. v. Berryhill*, No. 17-4110-JWB, 2019 WL 184103, at *7 (D. Kan. Jan. 14, 2019); *Velasquez v. Berryhill*, No. 17-17740, 2018 WL 6920457, at *2-*3 (E.D. La. Dec. 17, 2018); *Abbington v. Berryhill*, No. 1:17-00552-N, 2018 WL 6571208 (S.D. Ala. Dec. 13, 2018); *Bowman v. Berryhill*, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018); *Pugh v. Comm'r Soc. Sec.*, No. 1:18-CV-78, 2018 WL 7572831 (W.D. Mich. Nov. 8, 2018); *Page v. Comm'r Soc. Sec.*, 344 F.Supp.3d 902 (E.D. Mich. Oct. 31, 2018); *Davidson v. Comm'r Soc. Sec.*, No.

2:16-CV-00102, 2018 WL 4680327 (M.D. Tenn. Sept. 28, 2018); *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *4-*6 (N.D. Iowa Sept. 14, 2018).

The court acknowledges that the Eighth Circuit Court of Appeals heard argument on this issue in November 2019. However, there is no indication of when the Eighth Circuit will rule on this issue. Given the length of time a typical Social Security case takes, the court declines to delay ruling indefinitely until the Eighth Circuit files its opinion(s) in the cases on appeal. Accordingly, the court shall overrule this objection.

## V. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 20) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 19) is **ADOPTED** and the final decision of the Commissioner is **AFFIRMED**; and

(3) The Complaint (docket no. 3) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**DATED** this 13th day of February, 2020.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA